UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GARY EUGENE ALLISON,<br><br>Plaintiffs,<br><br>v.<br><br>CORIZON MEDICAL, RONA SIEGERT, and WILLIAM ROGERS<br><br>Defendants. | Case No. 1:19-cv-00122-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff Gary Eugene, an Idaho state prisoner, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Currently pending before the Court is Defendant Rona Siegert's Renewed Motion for Summary Judgment (Dkt. 49) and Defendant William Rogers' Motion for Summary Judgment (Dkt. 50). For the reasons explained below, the Court will grant both Motions.

## BACKGROUND

Allison suffers from congenital nerve damage to his spine, causing constant and severe pain. *Compl.*, Dkt. 3, at 4. Alison was in IDOC custody in 2015, during

which time prison doctors had prescribed 150 milligrams of oxycodone to him, which he alleges helped him tolerate the pain. He was released in February 2016, and then re-incarcerated at the Idaho State Correctional Institution ("ISCI") from June 23, 2017, until July 20, 2021, when he was released on parole. *Rogers Decl.* ¶ 8, Dkt. 50-3. Allison alleges that prison officials and medical personnel have refused to provide him with the same level of pain medication and refused to send him to a pain specialist upon his re-incarceration in 2017. Allison maintains this refusal to prescribe him narcotic pain medications or to refer him to a pain specialist for his chronic back pain amounts to the deliberate indifference of his serious medical needs.

Allison sues the Idaho Department of Correction ("IDOC") Health Services Director Rona Siegert and William Rogers, a nurse practitioner who provided care to Allison from July 24, 2017, soon after his re-incarceration in 2017, until March 2021.

1. **Allison's Treatment for his Chronic Back Pain While Incarcerated.**

Within days of being re-incarcerated in June 2017, Allison was seen by a licensed practical nurse. At the appointment, Allison discussed his history of back and neck pain and further reported having been in an all-terrain vehicle accident several weeks prior to his incarceration. *Rogers Decl.* ¶ 9, Dkt. 50-3. The LPN observed Allison walking normally and without difficulty, provided him with

ibuprofen for his reported pain, and scheduled him for follow-up appointments with Anthony Bushell, a physician's assistant, and with Defendant Rogers, a nurse practitioner.

Alison was seen by Bushell the following day after his appointment with the LPN, and on July 24, 2017, Allison was seen by Defendant Rogers for the first time. At this first appointment with Rogers, Allison reported back pain and claimed some congenital defects in his low back, for which Allison received surgery in 2010. *Id.* ¶ 11. Allison also reported to Rogers that he had been involved in an ATV accident. Rogers examined Allison and noted he could walk and stand without difficulty. As a precaution, however, Rogers ordered an x-ray of Allison's cervical and lumbar spine, which Allison received on August 23, 2017, and which showed as "unremarkable." *Id.* ¶¶ 11, 14.

Rogers continued to regularly see Allison, sometimes on a weekly basis, throughout his incarceration from 2017 to 2021. Numerous other medical professionals, including multiple nurses, physician's assistants, and doctors, as well as an off-site neurologist, also saw and treated Allison continuously during this time. *Id.* ¶¶ 9-80. Often Allison complained of feeling sharp, shooting pain that radiated from the back of his head or neck down to his legs, sometimes referring to the pain as feeling like a taser or electric shock. *Id.* ¶¶ 16-18. To treat his chronic pain, Allison received numerous pain medications, including ibuprofen, muscle

relaxers, Naproxen, Gabapentin, Indomethacin, Robaxin, Cymbalta, Lyrica, Abilify, Zyorexam Abpantoprazole, Celebrex, Tramadol, duloxetine, methocarbamol, and topiramate, among others. *Id.* ¶¶ 11, 14, 16, 18-19, 21, 30, 34, 36, 39, 42, 46, 49-50, 57. Rogers continually adjusted Allison's medications, seeking to alleviate his pain. Allison also received physical therapy, multiple x-rays, CT scans, and MRIs, and steroid injections to treat his pain. *Id.* ¶¶ 20, 31, 34-35.

Although Allison repeatedly requested that he be prescribed narcotic pain medications and that he be referred to a pain specialist, each of these medical professionals, including the Site Medical Director, Dr. Haggard, as well as a neurosurgeon who saw Allison prior to Dr. Haggard, recommended conservative care and did not recommend a pain specialist or surgery. *Id.* ¶¶ 22, 57, 62, 65. As Rogers explains, "narcotic medications, such as opioids, are generally not appropriate to treat chronic pain conditions," and instead such medications are generally better used for acute care or for a limited time after surgery. *Id.* ¶ 38. Also, as Rogers notes, concern in the medical community about the overuse or misuse of narcotics to treat pain and abuse by patients has grown in recent years, and narcotic medications are often not indicated if a concern exists of drug abuse and drug seeking behavior by a patient, particularly in the prison setting. *Id.* The pain clinic notes where Allison was treated prior to his incarceration in 2017 reflect

that Allison had "dirty urines" and "lost prescriptions," and Allison was issued a "last chance" before he was discharged from the pain clinic. *Id.* ¶ 43. For these reasons, Allison's providers, including Rogers, concluded that prescribing narcotic medications for Allison's chronic pain was not medically indicated. *Id.* ¶ 80.

The providers who treated Allison further opined that a pain specialist was not clinically necessary for managing Allison's back pain and other measures needed to be exhausted first. *Id.* ¶¶ 66. According to Rogers, the medical imaging findings did not have significant changes in Allison's back to suggest another offsite consult was necessary. *Id.* ¶ 80. Rogers also opines that a pain clinic was never indicated for Allison while Rogers was treating him, "including because of his presentation at medical appointments and as observed in the prison, because he ha[d] appropriate pain management at the prison," and because of Allison's continual drug-seeking behavior. *Id.*

2.	**Allison's Grievance**

As noted, Allison disagreed with the opinion of the treating medical professionals who recommended conservative care, and he instead sought narcotic medications to treat his pain and a referral to an off-site pain specialist. In this effort, on January 28, 2019, Allison filed a grievance complaining of pain caused by the nerve damage in his lower back. He requested a "tense unit and medication that works. And being sent to a pain specialist." *Second Siegert Aff.*, Ex. 1, Dkt.

49-2. The grievance was considered by a Level 1 and Level 2 responder, who advised Allison his medical chart had documented ongoing care for his pain complaints. Allison was further advised long-term use of narcotics or referral to a pain specialist was not indicated. *Id.*, Ex. 1 at 1-2.

After the grievance was denied, Allison pursued an appeal, which was reviewed by Defendant Rona Siegert – the Level 3 appellate authority. *Id.* ¶¶ 3, 6, Ex. 1. In his appeal, Allison stated "all I ask is to be sent to a pain specialist, I don't even care about the narcotic if there are new treatments." *Id.* Exs, 1 and 2. Consistent with normal practice, Siegert reviewed Allison's complaint, the Level 1 and 2 responses, as well as the medical records that were created during his then-current incarceration. *Id.* ¶¶ 5, 7. After reviewing the medical records, Siegert confirmed that Allison had been examined in the clinic on multiple occasions, a treatment plan had been prescribed, and Allison had received all the prescribed medical care.

Based upon the entries in the medical records by off-site neurosurgeon, Dr. Montalbano, Dr. Haggard, and as well as the nurse practitioners and physician's assistants, Siegert concluded that the care and treatment Allison had received was medically appropriate. Based upon the records, Siegert further agreed that Allison's medical history did not indicate that a referral to a pain specialist, in

addition to his referral to Dr. Montalbano, was medically indicated. For those reasons, Siegert affirmed the denial of the grievance. *Id.* ¶ 11.

On July 20, 2021, Allison was released from the prison on parole. Since the completion of briefing on summary judgment, Allison has been returned to prison and is currently housed at ISCI.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* The moving

party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## ANALYSIS

1. **Eighth Amendment Deliberate Indifference Standard**

Section 1983 is not a claim in itself but is merely the statutory vehicle used to assert specific constitutional claims against government actors. The Eighth

Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, protects prisoners against cruel and unusual punishment. Although prison conditions may be restrictive—even harsh—without violating the Eighth Amendment, prison officials are required to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds* by *Sandin v. Conner*, 515 U.S. 472 (1995).

The Eighth Amendment includes the right to adequate medical care in prison, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To establish an Eighth Amendment claim based on lack of adequate medical care, an inmate must show that a state actor responded to the serious medical need with "deliberate indifference." *Farmer*, 511 U.S. at 834. Eighth Amendment liability requires more than ordinary lack of due care for the prisoner's interests or safety. *Id.* at 835 (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The prisoner must show that the official knew of and disregarded an excessive risk to inmate health. *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004) (citing *Farmer*, 511 U.S. at 838).

The indifference to medical needs must be substantial. *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citation omitted).

Medical malpractice and negligence do not amount to an Eighth Amendment violation. *See Toguchi v. Chung*, 391 F.3d 1051, 1060-61 (9th Cir. 2004); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc) (citation omitted). Nor will civil recklessness (that is, failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) suffice. *Farmer*, 511 U.S. at 836-37. The fact that a reasonable person would have known of the risk or that a defendant should have known of the risk is not sufficient. *Id.* at 842. Rather, an inmate must establish recklessness in the criminal sense: disregard of a risk of harm of which the official is aware. *Id.* at 838-42. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Similarly, a mere difference of opinion as to which medically acceptable course of treatment should be followed does not establish deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.), *overruled in part on other grounds* by *Peralta v. Dilliard*, 744 F.3d 1076 (9th Cir. 2014). The Eighth Amendment does not provide a right to a specific treatment, *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997), and differences in judgment between an inmate and prison medical providers regarding

appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim, *Sanchez v. Vild*, 891 F.2d at 242; *see also Lamb v. Norwood*, 895 F.3d 756, 760 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants."). To state an Eighth Amendment claim "involving choices between alternative courses of treatment," the plaintiff must plausibly allege "that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson*, 90 F.3d at 332.

Stated another way, a plaintiff must plausibly allege that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015). If medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

## 2. Claims against Nurse Practitioner William Rogers

Allison claims that Defendant Rogers did not provide him with proper medical care for his chronic back pain. But nothing in the record supports these claims. The record demonstrates that Rogers continuously provided Allison with responsive, routine, and appropriate health care. No medical provider denied the existence of Allison's pain or refused to treat him for it. Indeed, the record shows that Rogers, in conjunction with other medical providers, including a neurologist in 2017, continuously and consistently monitored and treated Allison's complaints of back and nerve pain. Rogers, as well as the other medical providers, responsible for evaluating and treating Allison's pain, spoke with him, physically examined him, ordered tests, reviewed the results of tests, and reviewed what other providers recommended. Allison received several MRIs, CT scans, x-rays, referrals to physical therapy, steroid injections, prescriptions for various pain medications, and numerous adjustments to his medication to help alleviate his pain.

Allison insists, however, that he should have been prescribed narcotic pain medications to adequately treat his pain and referred to a pain specialist, but "to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk to the prisoner's health." *Toguchi*, 391 F.3d at 1058. Allison has

submitted nothing to make this showing. To the contrary, Rogers, as well as the other providers, considered Allison's requests for narcotic medications and determined that Allison "should be treated with conservative measures," and that prolonged use of narcotic medication to treat chronic pain was not medically indicated, particularly given Allison's history of "dirty urines" and "lost prescriptions" when he had been prescribed such medications in the past. They also considered Allison's requests to see a pain specialist but determined that referral to a pain specialist was not medically indicated.

In short, Allison offers no evidence suggesting the treatment Rogers and the other providers offered was medically unacceptable under the circumstances, *and* that the providers chose this course of treatment in conscious disregard of an excessive risk to Allison's health. Accordingly, the Court will grant summary judgment on the claim against Defendant Rogers.

### 3. Claims Against IDOC Health Director Rona Siegert

Siegert did not medically treat Allison. Instead, she only reviewed his grievances. Her review of the medical records demonstrated that Allison was receiving appropriate care, and the Court's review of those same records confirms her conclusion. The record contains no evidence that Siegert was deliberately indifferent to Allison's medical needs. The Court will therefore grant summary judgment in favor of Defendant Siegert as well.

## ORDER

**IT IS ORDERED that:**

1. Defendant Rona Siegert's Renewed Motion for Summary Judgment (Dkt. 49) is **GRANTED**.

2. Defendant William Rogers' Motion for Summary Judgment (Dkt. 50). is **GRANTED**.

3. Plaintiff Eugene Allison's Motion to Appoint Counsel (Dkt. 61) is **DENIED as moot.**

4. Plaintiff Eugene Allison's Motion to Appoint Counsel (Dkt. 66) is **DENIED as moot.**

DATED: May 3, 2022

_____
B. Lynn Winmill
U.S. District Court Judge